United States District Court
Southern District of Texas
**ENTERED**
February 27, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| McLean Barnett, | § § § | |
| *Plaintiff,* | § § | |
| | § | Case No. 4:22-cv-01491 |
| v. | § § | |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | § § § | |
| *Defendant.* | § § § | |

## MEMORANDUM AND RECOMMENDATION

In this appeal from the denial of disability benefits, the parties have filed cross-motions for summary judgment. Dkt. 12; Dkt. 14. The case was referred to the undersigned judge. Dkt. 2. After carefully considering Plaintiff McLean Barnett's motion, Dkt. 14, Defendant Kilolo Kijakazi's motion and supporting memorandum, Dkt. 12, 13, the parties' responses to each other's motions, Dkts. 15, 16, the record, Dkt. 10, and the applicable law, it is recommended that Defendant's motion be granted and that Barnett's motion be denied.

## Background

Barnett, who is currently 40 years old, served in the U.S. Navy during the Persian Gulf War before working as a meteorologist for over twelve years. R.278 (work history report); R.427 (noting prior period of military service).

During his last position, Barnett managed a team of offshore weather forecasters and provided weather support to clients facing emergency situations. R.279. He was terminated from his last position in January 2020. R.36. According to Barnett, this occurred both because the company underwent a reduction in force and because his conditions rendered him unable to do rotating shift work. *Id*.

In July 2020, Barnett filed a claim for social security disability benefits, alleging an onset date of January 28, 2020. *See* R.72. After his claim was initially denied, R.90, Barnett sought and received a hearing before an Administrative Law Judge ("ALJ"). R.12.

The ALJ issued a decision denying Barnett's request for benefits, concluding that he did not qualify as disabled. R.12-24. The ALJ found that Barnett satisfied the insured status requirements and had not engaged in substantial gainful activity since the alleged onset of disability. R.14. The ALJ also found that Barnett suffers from several severe impairments—obesity, post-traumatic stress disorder, obstructive sleep apnea, major depressive disorder, degenerative disc disease, and gastrointestinal reflux disease—none of which, singularly or in combination, meets or medically equals a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. R.14-17.

After reviewing the entire record, the ALJ concluded that Barnett had the residual functional capacity to do "a range of work between sedentary and

2

light levels of exertion," subject to certain limitations that account for his physical and mental impairments.  R.17-22.  Although the ALJ found that Barnett could not perform his past relevant work, the ALJ determined that Barnett could still perform certain jobs that exist in significant numbers in the national economy: Cashier II, bench assembler, and hand packager.  R.23-24. As a result, the ALJ concluded that Barnett did not qualify for disability benefits under the Social Security Act.  R.24.

Barnett appealed the ALJ's decision to the Appeals Council, which denied review.  R.1-8.  Barnett then timely filed this suit.

## Legal Standard

This Court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted).  "Substantial evidence is enough that a reasonable mind would support the conclusion." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012).  It is "more than a scintilla, but it need not be a preponderance." *Id.* (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)) (internal quotation marks omitted).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492,

496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

## I.   Legal framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). "Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749,

753-54 (5th Cir. 2017).  At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform."  *Id.*

## II.   Substantial evidence supports the ALJ's determination that Barnett does not qualify as disabled.

### A.   Regulations did not require the ALJ to address Barnett's disability rating from the Veterans Administration.

As Defendant correctly notes, recent regulatory changes foreclose Barnett's lead contention that the ALJ improperly failed to consider his total and permanent disability rating by the Veterans Administration ("VA").  *See* Dkt. 14 at 5-8 (Barnett's motion); Dkt. 15 at 1-2 (Defendant's response); *see also* R.324 (Aug. 3, 2020 letter from VA with Barnett's disability rating). Effective March 27, 2017, SSA regulations specify that the VA's determination "is not binding" and will not be "analy[zed] in our determination or decision ...."  20 C.F.R. § 404.1504.  Because Barnett's application post-dates the effective date of this regulation, "the law explicitly precluded the ALJ from considering [Barnett's] disability rating from the VA." *Zavala v. Kijakazi*, 2022 WL 3104854, at *5 (S.D. Tex. Aug. 4, 2022) (reaching this conclusion based on § 404.1504); *see also James v. Kijakazi*, 2021 WL 4311098, at *5 (S.D. Tex. Sept. 21, 2021) (noting this regulation and affirming the ALJ's decision).

**B.    Substantial evidence supports the ALJ's formulation of Barnett's RFC.**

Barnett's remaining contentions dispute the ALJ's formulation of the RFC.  An applicant's RFC is defined as "the most [an applicant] can still do despite [her] limitations."  20 C.F.R. § 404.1545.  "The ALJ is responsible for determining an applicant's residual functional capacity." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); *see also* 20 C.F.R. § 404.1527(d)(2) (the Commissioner of the Social Security Administration is reserved the final responsibility for opinions, including the RFC).   In determining the RFC, the ALJ examines all medical evidence in the record. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021); 20 C.F.R. § 404.1545 (RFC is based on "all the relevant evidence in [an applicant's] case record").

Here, the RFC accounts for Barnett's physical limitations by limiting him to work "between the sedentary and light levels of exertion" that requires (1) standing and walking for four hours and sitting for four hours each eight-hour workday—so long as Barnett can "change positions at will"; and (2) lifting and carrying, and pushing and pulling, 20 pounds occasionally and 10 pounds frequently.  R.17; *see also* R.19.  The RFC also includes restrictions that reflect Barnett's mental limitations, by specifying that Barnett "can understand, remember, and carry out detailed, but not complex, instructions; make

decisions; concentrate for extended periods; interact appropriately with others; and respond to changes in a workplace setting." R.17.

Barnett alleges that this RFC is not properly supported by substantial evidence, both with respect to his physical and his mental limitations. These challenges are addressed separately below.

> 1.    ***The ALJ properly based the RFC on all medical evidence about Barnett's physical limitations.***

Barnett's broadest contention asserts that the ALJ improperly made an independent determination of Barnett's RFC without supporting medical opinions about his physical limitations. Dkt. 16 at 4-5 (citing, *inter alia*, *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam), and opinions from other district courts). This argument is premised on the ALJ's rejection of several opinions that were unfavorable to Barnett: (a) the conclusion of a state agency medical consultant that Barnett's conditions were "nonsevere," R.58; (b) the opinion of another state agency consultant that Barnett could perform the full range (rather than a more limited subset) of light work, R.87; and (c) the opinion of a consultative examiner, Dr. Raja Bhatt, that Barnett had no physical limitations at all, R.1251. *See* R.21.

The ALJ thoroughly explained why those conclusions did not comport with either the experts' own findings or other medical evidence. *See id.* And by rejecting their ultimate opinions in whole or part, the ALJ determined that

Barnett was *more* limited than what those experts had opined. Yet according to Barnett, the ALJ, upon rejecting the experts' opinions, lacked sufficient evidence to conclude that Barnett could perform the level of work that the RFC provides. Dkt. 16 at 5. Barnett's position is mistaken.

A recent decision from this Court thoroughly explains the governing principles. *See West v. Kijakazi*, 2022 WL 4137297, at *7 (S.D. Tex. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4138574 (S.D. Tex. Sept. 12, 2022). As explained in *West*, the Fifth Circuit held in *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), that remand was required when "no medical testimony" supported the ALJ's conclusion that the claimant could perform sedentary work," but only when the record "contained 'a vast amount of medical evidence' establishing an impairment which the ALJ did not consider in formulating the RFC." *West*, 2022 WL 4137297, at *7 (quoting *Ripley*). The *West* court also characterized the Fifth Circuit's decision in *Williams v. Astrue*—cited by Barnett here, Dkt. 16 at 4—as a case where "there was *no medical or other evidence* supporting the ALJ's [RFC] determination." *West*, 2022 WL 4137297, at *7 (quoting *Williams*, 355 F. App'x at 831).

The *West* court also found notable the Fifth Circuit's characterization of *Ripley*'s principle: "an ALJ may not rely on his own *unsupported* opinion as to the limitations presented by the [claimant's] medical conditions." *West*, 2022 WL 4137297, at *7 (quoting *Williams*, 355 F. App'x at 832 n.6, which cited

*Ripley*, 67 F.3d at 557).  That was not the case in *West*, however, because the record contained "substantial medical and psychological evidence supporting the ALJ's conclusions."  *Id.*  And as the Fifth Circuit has recognized, "[a]n ALJ may properly formulate an RFC that is not an adoption of any medical opinion while still basing his decision on substantial evidence."  *West*, 2022 WL 4137297, at *7 & n.3 (quoting *Webster*, 19 F.4th at 719); *see also Wilson v. Kijakazi*, 2022 WL 17742005, at *5 (S.D. Tex. Nov. 17, 2022) (agreeing with *West* that the ALJ can formulate an RFC based on other record evidence even if the ALJ deems all medical opinions unpersuasive), *report and recommendation adopted*, 2022 WL 17738736 (S.D. Tex. Dec. 16, 2022).

Much like *West*, ample medical evidence supported the ALJ's formulation of the RFC with respect to Barnett's physical limitations.  For example, the ALJ found the opinion of the second state medical consultant be at least partly (if not "entirely") persuasive.  R.21.  That consultant concluded Barnett could lift 20 pounds occasionally and 10 pounds frequently.  R.81-82; *see also* R.42 (Barnett testifying that he could lift ten pounds).  The ALJ incorporated those restrictions in the RFC.  R.17.

The consultant also found that Barnett could stand and walk for six hours and sit for six hours during each eight-hour workday.  R.81-82.  But the ALJ noted an August 2021 MRI of Barnett's lower spine that detected "[m]ild degenerative changes in the lumbar spine with mild disc bulge at L4/L5 level,"

R.1693.  *See* R.19, 21.  On the other hand, records also reflect that Barnett exhibited only mild right-leg weakness with intact sensation and had normal nerve conduction.  Dkt. 1739, 1741-42 (Aug. 25, 2021 record).  And despite Barnett's self-described limitations, *see, e.g.*, R.45 (asserting that he could not work a job that did not require spending too much time on his feet or lifting weight), Barnett told a consultative examiner that he could climb stairs without difficulty, and the examiner noted Barnett had normal sensation in his extremities and a normal range of motion.  R.1248, 1251 (Nov. 11, 2020 report of Dr. Bhatt).

These and other medical records and findings supplied substantial evidence justifying the ALJ's downward adjustment in the RFC to the amount of time that Barnett could stand, walk, and sit (four hours), compared to what the state agency consultant had concluded (six hours).  R.17, 21.  At the same time, the evidence also supported the ALJ's finding that Barnett was not as physically limited as he claimed or as his wife claimed him to be.  *See* R.20, 22.

In addition, Barnett's own testimony indicated that he needed to shift positions frequently.  R.42 (Barnett testifying that he could sit at most for "35, 45 minutes before I've got to move to another position or another seat, get up and do something").  The RFC accommodated that restriction, by limiting Barnett to work that permitted him to change positions "at will."  R.17, 19.

In sum, what Barnett "characterizes as the ALJ substituting his opinion" for those of medical experts "is actually the ALJ properly interpreting the medical evidence to determine [Barnett's] capacity for work." *Taylor*, 706 F.3d at 603 (rejecting challenge to ALJ's formulation of an RFC based on medical information in the record). This Court should reject Barnett's challenge to the RFC's reflection of his physical limitations.

      2.     ***Substantial evidence supports the RFC regarding Barnett's mental limitations.***

        i.     **The ALJ was not required to obtain additional information from the consultative psychological examiner.**

Barnett's insistence that the ALJ wrongly failed to obtain a supplemental opinion from the consultative psychological examiner, Dr. Richard Hardaway, is misplaced. Dkt. 14 at 8-9. Barnett observes that the state agency consultant, Dr. Sylvia Chen, discounted Dr. Hardaway's opinion because he lacked "access to the totality of evidence in the claim or detailed knowledge and familiarity with" SSA's policies and requirements. *Id.* at 8. (quoting R.60). Barnett therefore insists that the ALJ had to "reach[ ] out to Dr. Hardaway for clarification and an updated report" because his opinions as the "sole examining physician ... are particularly probative." *Id.* at 8-9.

Barnett's contention is premised in part on outdated law. For claims like his, filed after March 2017, ALJs no longer "give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a); *see also Benavides v. Saul*, 2022 WL 4287645, at *4 (S.D. Tex. Aug. 4, 2022) (emphasizing this change to the regulatory standard), *report and recommendation adopted*, 2022 WL 3701170 (S.D. Tex. Aug. 26, 2022). Instead, the persuasiveness of medical opinions and any prior administrative medical findings from a medical source depends most critically on their "supportability" and "consistency." *See* 20 C.F.R. § 404.1520c(b)(2) (characterizing supportability and consistency as "the most important factors"). For the "consistency" factor, the persuasiveness of a medical opinion or administrative medical finding depends on how closely it tracks "evidence from other medical sources and nonmedical sources in the claim ...." *Id.* § 404.1520c(c)(2).

Under the applicable standard, the ALJ properly discounted Dr. Hardaway's opinion that Barnett lacked the ability "to sustain concentration and persist in work-related activity at reasonable pace" and was unlikely to be able to "maintain effective social interaction" with others "or cope with normal pressures in a competitive work setting," R.1259. *See* R.22. As Dr. Hardaway's own findings reflect, Barnett "presented in an organized manner," sustaining eye contact, and "easily established" rapport with Hardaway. R.1257. Barnett showed normal speech and was able to "engage[ ] in reciprocal conversation"

12

without "significant deficits in expressive or receptive language abilities ...." *Id.* Impairment to Barnett's concentration and attention was mild with "low average" (but still average) abstract thinking, average judgment, good insight, and "generally logical thought process ...." R.1257-58.

As the ALJ also noted, Barnett's other examinations did not find any "serious clinical deficits in mental functioning ...." R.22; *see, e.g.*, R.1754, 1759 (July 20, 2021 record, noting that Barnett was cooperative, oriented, attentive, with normal speech, logical thought, above-average fund of knowledge, capable of recalling immediate, recent, and remote events, provided relevant and readily comprehended answers, and exhibited fair judgment). There is a "discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding" about Dr. Hardaway's opinions. *See Pearson v. Comm'r of Soc. Sec.*, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted*, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021).

Defendant also correctly asserts that Dr. Hardaway's report was not "inadequate" or "incomplete" in the sense that warranted a request for supplementation under 20 C.F.R. § 404.1519p(b). Dkt. 15 at 3. Courts have concluded that "a report by a consultative examiner is not 'inadequate or incomplete' if it clearly outlines the medical examination but the ALJ disagrees with the consultative examiner's ultimate conclusion." *John G. v. Comm'r of Soc. Sec.*, 2022 WL 3678108, at *8 (D.N.H. Aug. 25, 2022) (collecting

13

authorities); *see also, e.g.*, *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 122 (6th Cir. 2016) (noting that consultative examiner's report was not inadequate or incomplete when the information included "provided the ALJ with an adequate basis to give limited weight to [the examiner's] assessment of [claimant's] physical functioning"). Here, the ALJ found Dr. Hardaway's opinion unpersuasive not because it was inadequate or incomplete, but because it was unsupported by the findings in his own report and other medical sources. This Court cannot second guess the ALJ's assessment. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) ("[T]he ALJ [was] free to reject the opinion of any physician when the evidence supports a contrary conclusion." (quoting *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

### ii. The ALJ properly relied on findings of the state agency consultant.

While rejecting Dr. Hardaway's conclusions, the ALJ found certain findings by state agency psychological consultants to be persuasive "overall." R.21 (discussing R.66; R.86). The ALJ focused on these consultants' findings that Barnett "is able to understand, remember, and carry out detailed but not complex instructions, make decisions, concentrate for extended periods, interact appropriately with others, and respond to changes in a work setting." *Id.* (quoting R.66 from Jan. 6, 2021 examination); *see also* R.86 (same conclusion in Apr. 27, 2021 examination); R.21 (ALJ's opinion). This finding

14

was essentially incorporated into the RFC.  R.17.  Barnett contends, however, that the first consultant made a separate and conflicting finding that Barnett is "moderate[ly] limited" in his abilities to understand, remember, and carry out detailed instructions.[1]  Dkt. 14 at 11-12 (citing R.63); *see also* Dkt. 16 at 1-2.  For that reason, Barnett maintains that the ALJ improperly relied on the first consultant findings, Dkt. 14 at 11; Dkt. 16 at 2, and that Barnett would have been deemed unable to perform jobs available in the national economy had his moderate limitations been reflected in the RFC, Dkt. 14 at 12; Dkt. 16 at 3.  Barnett's position, however, rests on several mistaken assumptions.

First, Defendant accurately explains why the ALJ was not required to consider the consultant's evaluation of Barnett's specific functional limitations, like the notations that Barnett was moderately limited in certain areas.  Dkt. 15 at 4-5.  Under the Commissioner's Programs Operations Manual System ("POMS"), that portion of the evaluation "does not constitute the RFC assessment"; rather, it "is merely a worksheet to aid [the consultant] in deciding the presence and degree of functional limitations and the adequacy of documentation ...."  SSA POMS § DI 24510.060B.2, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0424510060; *see also Banks v.*

---

[1] The second consultant's report notes that Barnett is moderately limited in his ability to carry out detailed instructions but has no limitations on his understanding and memory.  R.84.

*Berryhill*, 2018 WL 6514764, at *6 (N.D. Tex. Dec. 11, 2018) (quoting same portion of POMS).  The "actual mental RFC assessment is recorded" in the last part of the document—the narrative that the ALJ incorporated in Barnett's RFC.  SSA POMS § DI 24510.0690B.2; *see also* SSA POMS § DI 25020.010B.1, *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (summary conclusions in section I are just a "worksheet"; "It is the narrative written by the psychiatrist or psychologist in section III ... that adjudicators are to use as the assessment of RFC").

Indeed, Barnett's evaluation states explicitly that the consultant's ratings of specific limitations do not constitute the RFC assessment, which "is recorded in the narrative discussion(s)" only.  R.62.  The ALJ therefore did not err by not considering or discussing those ratings "as they did not contain the actual opinion of [the consultant] as to [Barnett's] RFC."  *Skiles v. Colvin*, 2013 WL 3486921, at *8 (N.D. Tex. July 11, 2013); *see also Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636-37 (3d Cir. 2010) (agreeing with district court decisions that the ALJ was not required to assign any weight to findings in the first section of a consultant's mental residual functional capacity assessment).

Second, even assuming that the consultant's ratings of Barnett's capabilities were appropriate to consider, the mere fact that the ALJ deemed the consultant's opinion persuasive, overall, does not require the ALJ "to incorporate into the RFC all of the opinion's assessed limitations."  *Triplett v.*

16

*Comm'r of Soc. Sec.*, 2021 WL 5016028, at *2 (N.D. Miss. Oct. 27, 2021) (collecting authorities).  Nor does the ALJ need to articulate how he "considered each medical opinion ... from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

Here, the ALJ had substantial evidence to conclude that Barnett can "understand, remember, and carry out detailed but not complex instructions"—just as both state consultants concluded.  R.66; R.86.  Medical records, including Dr. Hardaway's evaluation, indicate that Barnett has good insight, average judgment, with only mild impairment to his concentration and attention.  R.1258 (Dr. Hardaway's Nov. 17, 2020 report); R.1753 (July 20, 2021 mental status exam, noting that Barnett was attentive and exhibited fair judgment).  His long-term and immediate memory were described as intact, with average delayed memory.  R.1258; *see also* R.1754 (Barnett able to recall immediate, recent, and remote events).  Thus, even if relevant at all, the ALJ was free to reject the consultant's worksheet findings and agree instead with the consultant's ultimate conclusion when formulating Barnett's RFC.  *Cf. Martinez*, 64 F.3d at 176 (ALJ can reject a physician's opinion, based on the evidence).  The ALJ's decision should be affirmed.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant Kilolo Kijakazi's motion for summary judgment (Dkt. 12) be **GRANTED**, that

17

Plaintiff McLean Barnett's motion for summary judgment (Dkt. 14) be **DENIED**, and that the ALJ's decision be **AFFIRMED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 27, 2023, at Houston, Texas.

_____

Yvonne Y. Ho
United States Magistrate Judge

18